## VILLAGE OF PLAINVIEW V. REBECCA MENDELSON.

FILED JUNE 4, 1902.   NO. 11,897.

Commissioner's opinion, Department No. 2.

1. **Cities and Villages:** SIDEWALKS. The duty devolving on cities and villages to keep streets and sidewalks reasonably safe and fit for travel applies to defects in construction as well as neglect to repair, and the safety required extends to travel by night as well as by day.

2. **Sidewalks:** TERMINI GRADUATED TO NATURAL LEVEL OF GROUND. Where a sidewalk is built or suffered to remain on a part of the street only, its ends or termini must be so graduated to the natural level of the street as to permit pedestrians to safely pass from it to the street. *Village of Ponca v. Crawford,* 23 Nebr., 662, 666, followed.

3. **Negligence:** FACTS: CONFLICTING EVIDENCE: JURY. When facts relied upon to prove negligence are undisputed, but are of such a character that different minds might reasonably draw different conclusions from them, the question of negligence should be submitted to a jury for its determination.

4. **Excessive Damage:** JUDGMENT OF JURY AND COURT. Unless the testimony fairly shows the damages awarded by a jury to have been excessive, the judgment of the jury and of the trial court on the amount of damages will not be disturbed by this court.

5. **Instructions.** Instructions examined and approved.

ERROR from the district court for Pierce county. Tried below before ALLEN, J.   *Affirmed.*

*George T. Kelly* and *Powers & Hays,* for plaintiff in error.

*J. H. Berryman* and *Barnhart & Free, contra.*

OLDHAM, C.

This was an action for damages for personal injuries received on the sidewalk of the defendant village in the night-time. The negligence alleged in the petition was charged to consist in the manner in which the sidewalk was constructed, it being stated in the petition:

"The sidewalk was constructed of pine planks about eight (8) feet wide, and said sidewalk connected with a piece of sidewalk only four (4) feet wide, leaving four (4) feet at the end of said eight (8) foot walk at an abrupt termination not being connected with the other walk. That at the point where the said eight-foot [walk] terminated, there was a distance of twenty (20) inches from the surface of the said sidewalk to the surface of the ground at the end of said walk, with no railing, guards, lights, notice or anything else to enable travellers to see said defects or to protect themselves from being injured thereby, that there was a street lamp on the corner across the street from the point herein described, at said date, but the same was not lighted, and there was no protection, railing, notice or danger signal to shield or to protect people traveling along said street, or sidewalk from accident or injury, or to warn them thereof. And that said Locust street was, at the times herein mentioned, and now is one of the public thoroughfares of the defendant village, and was and is used by the public as such, and was so used at the time of the occurrence of the injuries hereinafter complained of by the plaintiff."

The petition then sets out that the plaintiff, without knowledge of the dangerous condition of the sidewalk, was traveling along said walk on a dark night, and while so traveling she stepped off the end of the eight-foot walk, and received the injuries complained of in the petition, and that her injuries were occasioned by the negligent construction of the sidewalk on the part of the village, and without any fault on her part. The village answered, denying negligence in the construction of the sidewalk, and

alleging that the injury, if any, was caused by the contributory negligence of the plaintiff. On the issues thus joined in the court below there was a trial to a jury, verdict for plaintiff for $2,400, judgment on the verdict, and defendant brings error to this court.

The first question called to our attention in the brief of defendant village is that plaintiff's petition fails to state a cause of action. This contention is based on the proposition that the negligence charged in the petition is directed against the manner in which the village constructed its sidewalks, and not against its conduct in permitting the sidewalk to become and remain in a dangerous condition after its construction; it being contended that in the construction of the sidewalk the municipality exercised legislative authority, "and no action for damages for an injury resulting from the lawful exercise of such authority can be maintained." We have no criticism to offer on the abstract proposition contended for,—that the village is not liable for the lawful exercise of its authority in the construction of sidewalks; nor do we deem it material to determine whether it acts in a legislative or a ministerial capacity in the work of such construction. It is well settled by an unbroken line of authorities in states which, like our own, make a municipality liable to a private action for neglecting to keep its streets and sidewalks in repair, that it is liable for injuries caused by a defective construction of the walks, to the same extent as it is liable for negligence in permitting its thoroughfares to become and remain in a dangerous condition after their construction. The duty devolving on cities and villages to keep streets and sidewalks reasonably safe and fit for travel applies to defects in construction as well as neglect to repair, and the safety required extends to travel by night as well as by day.

In *Sebert v. City of Alpena,* 43 N. W. Rep. [Mich.], 1098, it is said: "Laws of Michigan, 1887, p. 345, requiring cities to keep streets reasonably safe and fit for travel, applies to a defect in construction as well as to neglect to repair;

and the safety required extends to travel by night as well as by day."

See, also, 2 Dillon, Municipal Corporations [3d ed.], sec. 1034; *Blyhl v. Village of Waterville*, 57 Minn., 115, 47 Am. St. Rep., 596; *Beazan v. Mason City*, 12 N. W. Rep. [Ia.], 279; *Carver v. Detroit & Saline Plank Road Co.*, 28 N. W. Rep. [Mich.], 721; *Buchanan v. City of Duluth*, 42 N. W. Rep. [Minn.], 204; *Village of Ponca v. Crawford*, 23 Nebr., 662; *City of Beatrice v. Reid*, 41 Nebr., 214.

It is next contended by the village that the evidence in the court below is not sufficient to sustain the judgment. There is no serious dispute in the record as to the fact that the walk was constructed essentially in the manner as before set out in plaintiff's petition, the only conflict in the testimony being as to the width of the two walks. But that there was an abrupt jog of four feet in the walk at the place of the injury there is no dispute, nor is there any material dispute about the fact that the walk was from 18 inches to two feet above the ground at the terminus of the wider walk. It is clearly proved that plaintiff was traveling along this walk on a dark night, and it appears that the walk near the place of the injury was occupied by a number of people who were returning from an entertainment, and that plaintiff was walking straight ahead on the outer edge of the eight-foot walk, because of its crowded condition, when she stepped beyond the terminus of the walk, and received her injuries. It is also in evidence that the sidewalk on which the injury was received was along one of the principal thoroughfares of the village, and that plaintiff was unacquainted with its condition, and that there was no light or guard to call the attention of pedestrians to the inequality of the walks at the place of the accident. We hesitate to say that this evidence is not sufficient to sustain the judgment.

In discussing the duty of villages in the construction of their sidewalks, Cobb, J., speaking for the court in the case of *Village of Ponca v. Crawford, supra,* said: "To be passable and safe, a sidewalk need not be wide, very per-

manently built, nor of costly material. Neither need it be continuous throughout the length of the street, but when one is built or suffered to remain on a part of the street only, its ends or termini must be so graduated to the natural level of the street as to permit pedestrians to safely pass from it, and without being obliged to climb down over obstructions."

In *Berg v. City of Milwaukee*, 53 N. W. Rep. [Wis.], 890, the evidence showed that one sidewalk was from 21 inches to three feet higher than the other walk at the point of the intersection of the two walks. Plaintiff was injured in stepping from one walk to the other in the night-time, no light being maintained at the intersection of the walks. It was held that this evidence was sufficient to submit to the jury the question of the negligence of the city in the construction of its walks.

In *Tabor v. City of St. Paul*, 30 N. W. Rep. [Minn.], 765, the sidewalk on one street was from six to nine inches above the sidewalk along the other street at the point of intersection. There was no guard or light to call the attention of pedestrians to the inequality of the walks. Plaintiff was injured by a fall in stepping from one walk to the other. It was held that this evidence of negligence presented a proper question of fact to be submitted to the jury.

It is contended by the village that as there was no serious dispute about the facts as to the construction of the sidewalk, the trial court was in error in submitting the question of negligence in the construction of the walk to the jury; that, the facts having been virtually admitted, the question of negligence became a question of law which should have been determined by the court. It admits that ordinarily the negligence of a village in keeping its streets and walks in a reasonably safe condition is a mixed question of law and fact, but contends that, as there is no material dispute as to the facts alleged to constitute the negligence, nothing but a question of law is presented in this case. In cases of this character, even where the facts con-

stituting alleged negligence are not disputed, the question of negligence only becomes a question of law when the inference to be deduced from them is clear and certain. Where different minds may reasonably draw different conclusions from an uncontroverted state of facts, the question of negligence still remains a mixed question of law and fact, to be passed upon by the jury. 2 Dillon, Municipal Corporations [3d ed.], sec. 1026.

In *Sioux City & P. R. Co. v. Stout,* 17 Wall. [U. S.], 657,—a case in which there was no dispute as to the facts constituting the alleged negligence; one in which different conclusions might be drawn from the admitted facts,—the authorities on this question were carefully reviewed by the supreme court of the United States, and the doctrine there announced that, although the facts are undisputed, it is for the jury and not for the judge to determine whether proper care was given and whether they established negligence.

The question of the alleged contributory negligence of the plaintiff was properly submitted to the jury on instructions by the trial court, and we need discuss it no further, as there was plainly no evidence in the record to support the contention.

It is next urged that the damages are excessive. An examination of the medical testimony introduced in behalf of the plaintiff tended to show that the injury sustained was an exceedingly painful one, being a compound fracture of the ankle joint, and the bones of the leg having protruded through the skin from one-half to three-fourths of an inch; and according to the opinion of the physicians, this injury will render the plaintiff a cripple for life. We do not think, in view of this testimony, that we are called upon to say that the verdict of the jury was necessarily the result of prejudice or passion, or that it is unsupported by sufficient evidence. Unless the testimony shows the verdict of the jury to be excessive, the judgment of the jury and of the trial court on the amount of damages shall and will be respected and approved by this court.

The only other objection attempted to be called to our attention in the brief of the defendant village is as to the alleged errors of the trial court in giving and refusing instructions. These errors are merely alleged to have existed, and no effort is made to specifically point out any defect in any of the instructions given, nor to show any prejudice to the defendant because of the instructions refused; the village contenting itself with simply alleging that the court erred in each of these particulars, without attempting to direct us to the source of the error, or any harmful effect proceeding from it. We, however, have examined the instructions, and are satisfied that they fairly, ably and concisely stated the law applicable to the questions in issue.

It is therefore recommended that the judgment of the district court be affirmed.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

NOTE.—*Municipality.—Servant.—Liability for Tort.*
*Gillespie v. City of Lincoln,* 35 Nebr., 34.

When a public duty is imposed upon a town or other *quasi*-corporation without its consent, express or implied, such town or corporation is not liable to an action for negligence in respect to such duty, unless a right of action is given by statute. Where duties of a judicial nature are imposed upon any such corporation, the execution of which requires the exercise of deliberation, judgment and discretion, the corporation is exempt from all responsibility by action for the motives which influence it and for the manner in which such duties are performed. But when judicial duty ends and ministerial duty begins, their immunity ceases and liability attaches. But where a corporation is charged with the performance of some public duty as a condition, express or implied, upon which it holds its corporate powers; or where a grant is made to a corporation of some special power or privilege at its request, out of which its public duties grow; or where some special duty is imposed upon a corporation, not belonging to it under the general law, with its consent;—in these and like cases, if the corporation is guilty of negligence in the discharge of such duty, thereby

causing injury to another, it is liable to an action in favor of the party injured. *Jones v. City of New Haven*, 34 Conn., 1. The case just cited was an action on the case for an injury to the plaintiff by the falling upon her of a dead limb from a tree in a public square in the city of New Haven, which limb the city had negligently allowed to remain upon a tree. The charter of the city of New Haven, which was accepted by the city, gave the common council of the city power to make such by-laws as they saw fit for the regulation and protection of trees in the public squares and streets without certain special license. *Held*, That the city was liable in damages.

On the 26th day of May, 1871, Max K. Maxmilian, plaintiff's intestate, while attempting to enter a street car, was struck and run over by an ambulance wagon which was driven by an employee of the commissioners of public charities and corrections, and from the effect of the injuries received he died. The court held that the city was not liable, for that the duties imposed upon the commissioners of public charities and corrections, in and for the city and county of New York, by the statutes creating and governing that department, are public in their character, and from their performance no especial corporate benefit is derived. Such officers therefore are not, nor are the subordinates appointed by them, agents or servants of the municipality for whose negligent acts it is liable. *Maxmillian v. Mayor*, 62 N. Y., 160.

A city, in the ordinary and usual care of its streets, both as to repairs and cleanliness, acts in the discharge of a special power granted to it by the legislature, in the exercise of which it is a legal individual, as distinguished from its governmental functions, when it acts as a sovereign. Such city is liable for the negligent acts of its employees in its department of street cleaning. *Missano v. Mayor*, 160 N. Y., 123.

The corporation of the city of New York is liable for injuries to third persons resulting from the negligence of persons employed by officers of the corporation in the repair of its public sewers. *Lloyd v. Mayor*, 1 Selden [N. Y.], 369.

Although a municipal corporation has charter power to extinguish fires, to establish a fire department, to appoint and remove its officers, and to make regulations in respect to their government and the management of fires, it is not liable for the negligence of firemen appointed and paid by it, who, when engaged in their line of duty upon an alarm of fire, ran over the plaintiff, in drawing a hose reel belonging to the city, on their way to the fire. *Hafford v. New Bedford*, 16 Gray [Mass.], 297.

A municipal corporation is not liable for injuries to the plaintiff, caused by the bursting of the hose of one of the engines, of the corporation, through the negligence of a member of the fire department. *Fisher v. City of Boston*, 104 Mass., 87.

A municipal corporation is not liable for negligence of a member of the fire department, whereby sparks from the fire-engine of the

corporation caused the plaintiff's property to be burned.  *Hayes v. Oshkosh*, 33 Wis., 314, 14 Am. Rep., 760.

A city is not liable for the negligence of officers of a fire department unless made so by express statute, or unless the act complained of was directly ordered by the corporation.  *Burrill v. Augusta*, 78 Me., 118.

The reasoning of these cases is expressed by Bigelow, C. J., in *Hafford v. City of New Bedford, supra:* "Where a municipal corporation elects or appoints an officer, in obedience to an act of the legislature, to perform a public service in which the city or town has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to perform in pursuance of a duty imposed by law for the general welfare of the inhabitants or of the community, such officer can not be regarded as a servant or agent, for whose negligence or want of skill in the performance of his duties a town or city can be held liable."  See page 302.—W. F. B.